May it please the Court, I'm Mark Reichel with the Federal Public Defender in Sacramento, California, on behalf of Jeffrey Grubbs. I was Mr. Grubbs' attorney shortly after his arrest up until today. In this case, in the district court, shortly after his arraignment, we filed a motion to suppress the evidence alleging that the search warrant was void and defective at the outset, as well that the execution of the search was impermissible under the Fourth Amendment and asked that all evidence be suppressed. I filed a motion in that regard, which was extensive. The government received a copy of that motion, shared it with the officers that executed the search warrant and that prepared the affidavit. I then filed a reply to that motion. The government, again, shared that with the officers. The court then held an evidentiary hearing. After the evidentiary hearing, where the officers testified, the government then submitted additional declarations on those issues. At the conclusion of all of that, the evidence that rested at the district court level was as follows. Specifically, that the officers had an anticipatory search warrant for Mr. Grubbs' residence. The search warrant face sheet said on the top of it, anticipatory search warrant. For the premises to be seized, searched, and the items to be seized, it said to see the attachments to the affidavit. The evidence also showed that 30 minutes into the actual execution of the warrant, Mr. Grubbs was provided a copy of the search warrant face sheet as well as two attachments, an A and a B, evidently the attachments that had been to the affidavit at some point. Those attachments, the first one described the place to be seized and B was the items to be seized. However, the evidence in its best scenario for the United States is that it was folded up in thirds and that all appeared on the table in front of Mr. Grubbs in custody. Thirty minutes after the search was just the face sheet of the search warrant affidavit, which said anticipatory search warrant and didn't say anything else about what was to be seized or where they could search. At the conclusion of the search, approximately five hours later, Ms. Broadstreet, Mr. Grubbs' wife, was given a copy of the search warrant face sheet and nothing else except for the inventory of what had been taken. So let me just get these facts straight. What was put on the table was the face sheet and the two attachments, which lists the stuff that's to be seized. Correct. Right. But then when they left the search warrant with them, they only left the face sheet? Evidently. Yes. I see. And that warrant's on the table with the attachments that say what's to be seized, and was that available for anybody to look at? Yes, I believe so. Mr. Grubbs was in custody at the time, surrounded by ñ there were nine officers conducting the search. It was on the table, according to the agent's testimony, uncontradicted, folded in thirds, so that all that appeared to Mr. Grubbs was the face sheet itself. Right. And he didn't ask to see it? There is no evidence that he asked to see it. Okay. And then when they left it, they took away the attachments. They just left the face sheet. Yes. The record reflects that all that was left was the face sheet. Now, in this case ñ And the inventory of what was taken. Thank you. In this case, it is an anticipatory search warrant where the triggering event, the condition precedent to this search, was not in the search warrant face sheet. It was not in attachment A and B, which was apparently folded in thirds behind the face sheet, but it was in a separate affidavit. At the end of all of this testimony, the government ñ Now, wait. That separate affidavit was not shown to either of the Grubbses? Correct, Your Honor. It was not put on the table? No. No, it was not put on the table. And, in fact, after the ñ it was ñ could not have been more painfully obvious the legal relevance and significance of whether the attachment, the affidavit with the triggering event, was either shown to the Grubbs, given to the Grubbs, or left at the scene. The only evidence was a statement from the agent from the government's leading question, which was, was the affidavit present at the site? To which the agent responded, yes. It was present at the site of the search is the only evidence there is. I believe that does not qualify sufficient evidence under this Court's two cases from this circuit, specifically the Hotel, H-O-T-A-L opinion, as well as the McGrew opinion. It does not satisfy the Fourth Amendment, as well as the reasonableness of the Fourth Amendment, because the particularity requirement of the Fourth Amendment is not satisfied when the triggering event is contained not on the face sheet, not in attachments, but in an affidavit. And that affidavit is not either in their ñ excuse me ñ is not either attached to the search warrant, which is provided to the individuals being searched, left at the scene, or there is evidence from the government at the hearing that the agent had it, and it was available for review by the person being searched. That evidence is not on it. That's what you say they needed to know was the triggering event, not the probable cause? The triggering event. Okay. The triggering event was nowhere. In fact, the evidence is very ñ the record is extremely clear that they would have no idea what the triggering event was in the defective paperwork that was served with them. All they received was a search warrant face sheet at the end and during the middle, attachments A and B, which is where they were going to search and what they were going to look for. But the triggering event is extremely important as well. In order for it to serve a dual purpose, which is one to ñ the particularity requirement of the Fourth Amendment has two purposes, one so the officers cannot commit a general exploratory rummaging search, and as well the individual being searched has the opportunity to monitor and to review the activity that's taking place. Why does the triggering event information help with those two purposes? It is the same as if it was a nighttime or a daytime search. If in the affidavit it said daytime search only, and this was at nighttime, and the individual was not allowed to look at the affidavit, it wasn't provided, and it wasn't attached to the warrant, the individual would have no opportunity to object or to know that there was a violation of their Fourth Amendment rights, to wit, an unreasonable and illegal search of their home. The triggering event regarding the condition precedent as well is just as important. If the individual could say that hasn't been delivered yet, what is this condition precedent, I have no knowledge of this, and it didn't happen, the individual at least has the opportunity to be fully informed, as well it will prevent citizen and law enforcement encounter for being anything other than civil during the search of someone's home. Additionally, in this case, the officers did not provide ñ well, at any time, was a complete copy of the warrant provided. They got a face sheet, which is ñ makes Federal Rule of Criminal Procedure, Rule 41, not complied with in this case, because 30 minutes into the search is when Mr. Grubbs was shown a copy of his face sheet as well as a few attachments, and at the end of the search they were given just the search warrant face sheet. It makes sense, and it's required under the Fourth Amendment and under this Court's authority, under the Gantt opinion, that at the outset, at the commencement of the search, the individual must be given a copy of the warrant so they can watch and monitor the search. In this case, he was given 30 minutes thereafter. That is a fundamental violation of the rights for several reasons. One, it was 30 minutes into the search. An extensive search had already taken place for 30 minutes. There's no dispute in the record about that. Additionally, what they were given, what makes this a fundamental violation of Rule 41, is the fact that what they were given is nowhere near what they should have gotten. They got a very small part, not the essential documents, and they got a cover letter about a search, in essence, when they only got the search warrant face sheet. And I have two minutes remaining, which I would like to reserve for rebuttal. Thank you, counsel. Good morning, Your Honors. May it please the Court. I'm Camille Skipper, Assistant U.S. Attorney from Sacramento, appearing on behalf of the United States. I guess I'll begin with the anticipatory search warrant in this case. Under this Court's opinion in HODL, three things are required when you have a defective anticipatory search warrant, defective in the sense that the triggering event does not appear on the face sheet. The government admits at the outset of this case that that was a defect, but there are ways of curing that defect. And the Court identified those in the HODL case. One, the triggering event has to appear in the affidavit. Two, the affidavit must be available to the officers at the site of the search for two reasons. One, to guide their actions, and two, to provide information to the defendant. And third, the warrant has to be sufficiently incorporated into the affidavit. In this case, the triggering event appears twice in the affidavit, in paragraphs 14 and paragraph 61. But the problem is that people searched never saw the affidavit, never tendered to them, never offered to them. Your Honor, it's true that it was not tendered to them without a request. They didn't make a request, but it is the case, the evidence in this case is uncontroverted, that the affidavit was at the site of the search. There is no ---- That's not good enough, counsel. Well, there's no reason to believe that if Mr. Grubbs had asked to see the incorporated affidavit, that it would not have been shown to him. It was there, it was available, and it was available to provide information to the defendant. Is that the same rule for a warrant, that if you arrive and you may conduct a search, but you have the warrant with you and it's available and you never show it, that that's sufficient? No, Your Honor. No, that would not be the case. But why is it any different with a part of a warrant that's incorporated into an affidavit and therefore cures the defect? Why is there a different rule for that than for the rest of the warrant? Your Honor, I would argue that it's different because of the nature of the particularity requirement that each of those documents meets. With regard to the attachments that were provided, the list of items that were to be seized, that meets a certain part of the particularity requirement that the Supreme Court has previously found, or has recently found. If that is missing, the warrant is so defective that it is tantamount to a warrantless search. In this instance, the lack of the triggering event appearing in the documents that were initially provided to the Grubbs, remembering that the affidavit was indeed present to the search and would have been available to show the Grubbs had they asked and that it was not being kept for any improper purpose or to gain some sort of advantage. Counsel, you said initially shown it was 30 minutes into the search before they put anything out where she could see what was intended to be seized. Is that correct? There was testimony that there was about 30 minutes between the time that they first contacted Mr. Grubbs and the warrant was provided to him. During that period of time, there was testimony as to what was going on. It was not the case that an extensive search had already started. During that 30-minute delay, there was testimony that the agents were securing the residents, they were taking photos, making sketches, they were getting the kids out of the residence and off to school, and they were securing narcotic paraphernalia. And it's that they were searching the children's packs, they were taking pictures and drawing sketches. Now, it seems to me that when they're planning this elaborate scam to pick up this guy, that they should know what they have to do. They have to produce the warrant upon entry and they have to produce what's going to be seized. This just seems like kind of a keystone cuffs operation that took place there. Well, I don't know if I would characterize it as a keystone cuffs operation. There were certainly a lot of things going on in that 30 minutes. But the district court found that there was indeed a technical violation of Rule 41D. And for the purposes of this argument, the government concedes that there was a technical violation. Well, I see it as more than a technical violation. Explain to me why it was only technical. Because it was delay. It was not denial, Your Honor. It wasn't. The inspectors were aware of their obligation. There was a delay in providing the warrant. There was not a denial to provide the warrant. Mr. Grubbs had not previously asked for the warrant. And they provided it without prompting. Wait. When did they provide the warrant in the sense of a warrant with the right information in it? They never did that. They only provided the face sheet, right? So it was not just delayed. It was denied because they never got the affidavit, right? They did not receive the affidavit which contained the trigger. Okay. Never. So in a sense, the complete warrant was denied to them. It wasn't just delayed. Well, we have two different issues, neither one of which is an uphill fight. One, it was denied entirely, as Judge Vestani says, because the essential material was never shown. But the second separate issue is even if it had all been complete, whether the delay of 30 minutes in presenting the warrant is in itself a sufficient reason for reversal. Yes, Your Honor. With regard to the second issue, they are two separate issues and they are dealt with separately in the briefs. On the second issue of the Rule 41D, what we characterized and what the district court characterized as a technical violation, it would be characterized as a technical violation because in trying to research what indeed is a fundamental violation, there wasn't a lot of case law available. But certainly what this Court has said in the past is that a fundamental violation would be a search that was unconstitutional under traditional Fourth Amendment standards, and I don't believe that a 30-minute delay and where it's not a delay How long did the search take? It took several hours, Your Honor. Suppose they had given them the warrant at the end of the search. Would that have been a technical violation? Well, that would have been a clear violation of this Court's ruling in Gantt. That would look much more like the Gantt case, particularly if the individual had been asking for the warrant and had been denied it. But even if the individual had not been asking for it. Well, someone doesn't know that he's entitled to see a warrant, and they come in and as they're leaving, they say, by the way, here's the warrant. As they're leaving, that would be – I think that would be a clear violation of this Court's ruling in Gantt, and under that analysis, it is. Why don't you draw the line? When is it all right? At what point do you have to show the individual being searched a warrant? In order for it not to be technical, but a real violation. Well, I think you have to look at the individual facts of the case. And in this instance, where you have a 30-minute time period in which individuals are not simply sitting around, where Mr. Grubbs was not asking for the warrant, where they were not denying him the warrant, or where there was no reasonable explanation for delay. I mean, I would concede that this case would have been cleaner and better, and I wouldn't be making this argument if the postal inspectors had provided the warrant when he initially met Mr. Grubbs outside the residence. But in light of the circumstances, and these were circumstances that the district court considered, the presence of the two young children, which Mr. Grubbs was very concerned about. He didn't want – They searched the children's backpacks because they wanted to get the kids out of the house as quickly as possible. And in any case where agents are going to be executing a search warrant, they don't want anything to leave the house without having them searched. They could have made the kids stay there, kept them from going to school. Defended the warrant and then done the search. They could have. And that's why I believe you have a technical violation of Rule 41d in this case, as the district court found. This sounds very much like the kind of rule you want us to adopt that Justice Scalia would not much care for. We have to look at each case and measure whether it's 30 minutes, 40 minutes. I suppose it depends on whether they've discovered the object by then that they're looking for. And how does anybody know? Don't you want a nice clear rule so that the officers can tell what they have to do and wouldn't it be better to say to them, when you arrive you present the warrant before you start the search? And that is what this court has said. However, this court has also set up an analysis for situations when mistakes are made. And it did not create a bright line rule in the Gantt case. What it created was two categories of error. And what I'm arguing to this court and what the district court found is that this case falls into that first category of a technical violation of the rule. Can I ask you, you submitted information saying that Ramirez Butte Silver was affirmed. Was there any teachings in this Supreme Court decision, or is it just some kind of minute order or something? Actually, it's a full order with a dissent. The Ramirez case is not directly on point in this instance. It was a Bivens action where the lack of particularity was the failure to have any list of items to be seized present at the search site. The importance of that case, to the extent that it's important here, it says two things. One, it acknowledges what this court has previously acknowledged, and that's that the incorporation of an affidavit and the presence of the affidavit at the site can cure the defect, particularity. And the second thing it notes in footnote 5, and I will admit, Sharon, I read this opinion yesterday. But what it says in footnote 5 is that there is no basis in Fourth Amendment law or Rule 41 for the basic conclusion, on which to base the conclusion that the search warrant must be provided at the outset of the commencement of the search. In this instance, however, we argue, as we did in the briefs, that any violation of Rule 41 was a technical violation. And because there was no deliberate disregard for the rule, as the district defendant, that the violation should, at least in this instance and upon these facts, not be found to require suppression. And I would briefly like to touch on the issue of the suppression of the statement. I think it's important here to recognize just what the situation was. Here, Mr. Grubbs, after the delivery of the package, which Mr. Grubbs' wife took him to the home, which was a triggering event, Mr. Grubbs left the residence. He – officers then temporarily detained him, stopped him. They did not place him under arrest. They did not draw their guns. They did not handcuff him. And they asked him to go. The court found he was in custody, right? But what the court – what the court said is that the government's concession, that there was a temporary detention, was tantamount to a concession that he was in custody. That is not consistent with this Court's law. This Court has said on several occasions, including in the Woods case, that a temporary detention, even in a non-tarry stop sort of situation, because Woods took place in a bar or nightclub, a temporary detention, interrogation during a temporary detention is not custodial interrogation. A temporary detention does not equal custody. As the Supreme Court has found, a formal arrest or a restraint, which is tantamount to a formal arrest, is what is required for there to be custody. In this instance, he was simply told to wait for a moment, that someone was – he asked what's going on, and he was told that someone was going to be coming to tell him. And at this time, Inspector Welsh, who was in charge of this operation, was walking toward the house, ensuring that everything was secure. After having spoken with Mrs. Grubbs and told her what was going on, he walked up to Mr. Grubbs, and he said, you know why we're here. The district court found this was not posed as a question, and that is not a clearly erroneous factual finding. And what the district court found, that this is – this at best does not call for more than a yes or no answer, and that is not – and any yes or no answer would not necessarily be incriminating. It was not custody, and under the Hudgins factors, which are cited in my brief, it is not custody, and it was not interrogation. Well, even if it's not, would you not say that where the statement in the – in during an illegal search or where an illegal search is starting, a statement as to what the officer – where the object is located is inextricably involved with that illegal search? It's not as if he said, I committed the crime, but he said what you're looking for is in the garage. But the statement that the inspector made was not meant to elicit that information. No, no. But isn't it a product of the illegal search, the fact that they're searching for something and he tells them where it is? This – that occurred before the search had begun. Mr. Grubbs was still – There were people in who were doing protective sweeps and – There was a protective sweep. They were securing the home. Which is part of the search. I would argue that the protective sweep itself was for the safety of the agents. They were not at that point looking for any of the items listed on the – listed in the search warrant as items to be seized. That was simply a time to make sure that there was no one in the residence who might harm officers, no one that would rush out with a gun, that the scene was safe and that they could then proceed. Counsel, if we find that the search was illegal, do we ever even need to get to this issue? If you find that the search itself was – yes, I do believe you need to – you would then need to address the suppression issue. Because the statement was made before the search. And having been made before the execution of the search warrant, I do believe that you would have to address the issue. I don't believe it's the fruit of an illegal search. I do believe you would have to address it. Let's assume it was made after the search started. Then what? If the statement was made after the search, well, then the court would have to consider whether it is the product of an illegal search. And I don't believe that that is – that's an analysis that would have to take place. I don't believe it's automatic. And I realize I have far gone over my time. I will answer any additional questions. That's not your fault. Thank you very much. Thank you. I can begin my rebuttal by acknowledging that I believe I made an error when I spoke last. Specifically, the question was asked about whether Mr. Grubbs ever asked to see the search warrant affidavit or the search warrant. The testimony from the one government agent, Agent Walsh, was that he did not. But the testimony from the other agent who was present, Agent Esteban, at the evidentiary hearing was that Mr. Grubbs had asked several questions about what was going on and what was going to happen and so forth and so on. The exact answer to the question was, did he ask to see a copy of the search warrant? I believe the answer is no, that he didn't specifically state that. But the testimony was also that his wife was in the background. I think this was confirmed by one of the agents as well, as well by his wife, that she was asking repeatedly from the beginning, the moment they got there until the end, what's going on, why are you here, and what exactly is going on. What's important about the recent opinion of Ramirez that was just cited by the United States Supreme Court, is that the facts are so similar to this case, I think it compels suppression of the evidence. Specifically, Ramirez, they came with just the face sheet, and they didn't leave behind attachments which talked about the objects to be seized. And in this case, if the Court would look at page 319 of the excerpt's record, as well as page 152, it talks about Ms. Bradstreet saying she only got a one-page search warrant face sheet left at the end of the search. That wasn't contradicted by any other evidence. The Court, in its ruling at page 319, appeared not to understand, 319 at the top of page 320, appeared to not understand the significance of that. And it quotes from her that she received a copy of the warrant sheet, given included attachments as far as what they took, comma, the inventory. And the Court cites McGrew, and I don't believe understands the significance that the Ramirez Court just made. And the Ramirez Court, which just came down two weeks ago, mentioned that the search warrant to be served must include all important documents. And if I can quote from it. I had it indexed somewhere. Now I can apply it. And they quote from this circuit in Ramirez, and they state that the Court in the Ninth Circuit added that the leaders of the search team must also make sure that a copy of the warrant is available to give to the person whose property is being searched at the commencement of the search, and that such copy has no missing pages or other obvious defects. And they quote the Ramirez Court from the Ninth Circuit on that. All right. Thank you, counsel. Thank you very much. The case just argued will be submitted. The next case for argument is U.S. v. Rutherford.
judges: B. Fletcher, Reinhardt, Restani